In the Matter of the Estate of ELIZABETH P. COFFIN, Deceased.

Surrogate's Court, Kings County, August 31, 1934.

*Guggenheimer & Untermyer* [*Milton E. Mermelstein* of counsel], for the coexecutors.

*Banton Moore,* for Elwood J. Miller.

WINGATE, S. The objections to the present account raise a question never determined in any reported decision respecting the manner of exercising the right under section 18 of the Decedent Estate Law to elect to take against the provisions of a testamentary document.

Testatrix died on October 16, 1932, leaving a will executed on June 15, 1931. The only benefit given her surviving husband thereunder was a legacy of $800. Her net estate aggregated somewhat in excess of $7,000.

The subsequent chronological sequence of events was as follows: On October 24, 1932, the will was filed in this court; two days later the surviving husband executed and acknowledged a notice of election to take against the will pursuant to section 18 of the Decedent Estate Law and delivered it to his attorney with instructions to serve, file and record it. On December eighth the will was admitted to probate and letters testamentary issued to Elwood J. Miller of Macon, Mo., one of the executors named therein. On December twenty-second similar letters were issued to Marceline M. Cook of Salt Lake City, Utah, the other designated fiduciary.

Nothing further transpired until March 21, 1933, on which day James B. Coffin, the surviving spouse, died. The notice of election was personally served on Elwood J. Miller on May twenty-second, and on Marceline M. Cook three days later, and such notice with proof of personal service on Miller was filed and recorded in this court on June third, and with proof of service on Marceline Cook on June sixth.

It will be seen from the foregoing recital that the surviving spouse himself executed the notice but that nothing further was done toward compliance with the requirements of section 18 until five months and fourteen days after the issuance of letters testamentary, which was more than two months after the death of the surviving spouse.

It is the contention of the objectant that since the partially disinherited widower had executed the notice of election prior to his death, the requirements of the statute have met with compliance in spite of the fact that the service, filing and recording did not take place until the end of the expiration of the permitted period and over two months subsequent to his death.

Both of the contending parties place reliance upon alleged authority in substantiation of their claims, although both concede

that there has been no determination in this State which is in point on the precise question involved. The accountants lay stress on certain excerpts from the opinions of this court in *Matter of Mihlman* (140 Misc. 535) and *Matter of Zweig* (145 id. 839), which renders necessary an examination of the questions therein determined.

In *Matter of Mihlman* (140 Misc. 535) this court held, following earlier authoritative determinations of this State respecting a widow's election between her right of dower and a testamentary benefit (*Flynn* v. *McDermott*, 183 N. Y. 62, 65, 66; *Camardella* v. *Schwartz*, 126 App. Div. 334, 336; *Youngs* v. *Goodman*, 240 N. Y. 470, 473; *Matter of Brown*, 212 App. Div. 677, 679), that, as expressly stated in the statute, the right of election granted by the present section 18 of the Decedent Estate Law is " *personal* " to the surviving spouse and is, therefore, incapable of exercise by another on his behalf after his death.

In *Matter of Zweig* and *Matter of Lottman* (145 Misc. 839) it was decided that the statute required that the notice of election be signed by or on behalf of the surviving spouse (p. 859), and that service and filing thereof within the statutory period were essential to effectiveness (p. 849).

These decisions, however, determine merely that if nothing is done in compliance with the terms of the statute prior to the death of the surviving spouse, the right lapses and that the failure to meet all of the statutory requirements within the prescribed period produces a like effect. The present problem is concerned with the question of the effectiveness of the election where certain acts directed to the exercise of the right are performed during the life of the would-be elector but others are accomplished after his death.

Aside from these substantially irrelevant decisions, the reliance of both litigants is placed upon decisions of tribunals of other States which have construed their respective local enactments. In certain cases their holding has been that the performance of acts as limited in their scope as those demonstrated in the case at bar sufficed for the purpose of effecting the desired result, w ile in others the reverse determination has been attained.

The distinction in the interpretation of these various enactments appears to lie in whether the mere expression of dissent by the attempted elector is the matter of vital importance under their respective terms, with service and/or recording merely for the purpose of information to those whom it may concern that the act has been accomplished, or whether the act of election requires for its performance a series of acts of which the expression of dissent is only one, which, in the absence of the completion of the others, is negatory and valueless.

Stated otherwise, the distinction lies in whether the execution of the written dissent is, in and of itself, the complete and valid act of election which may be voided by the failure to perform specified conditions subsequent, such as serving or recording, or whether the performance of every one of the required acts is a condition precedent to the fruition of the right.

In the former class of cases may be noted *McGrath* v. *McGrath's Admrs.* (38 Ala. 246) and *Georgetown National Bank* v. *Ford* (215 Ky. 472). *Wingo* v. *Parker* (19 S. C. 9) and *Baxter* v. *Bowyer* (19 Ohio St. 490), cited by the objectors, are worthless as precedents, since the phraseology of the statutes upon which they are based is not given. *Matter of Peck* (80 Vt. 469; 68 A. 433) and *Matter of Buckland* (239 Penn. St. 608; 86 A. 1098) are not helpful to a determination since in both the electing spouse had in his lifetime performed all acts requisite to a perfection of his asserted rights. (Cf. *Matter of Beck*, 265 Penn. St. 51, 55; 108 A. 261.)

On the other hand, the authorities upon which the accountants at bar chiefly rely (*Bailey* v. *Hughes*, 115 Iowa, 304; 88 N. W. 804; *Matter of Beck*, 265 Penn. St. 51; *Cook* v. *Bennett*, 207 Ky. 837; 270 S. W. 463; *Matter of Wilson*, 297 Penn. St. 348; 147 A. 70; *Matter of Flower*, 30 Penn. Dist. Ct. 967) are not at all in point on the question at issue. In each, the attempted election was held abortive by reason of a failure at any time to perform all of the prescribed steps for the perfection of the right. In each some essential element was lacking and there was in none any question of death of the attempted elector.

An authority for the accountants entitled to like weight with the *McGrath* and *Georgetown National Bank Cases* (*supra*) is *Church* v. *McLaren* (85 Wis. 122; 55 N. W. 152) in which the Supreme Court of Wisconsin construed the statute of that State as holding that the performance of all of the prescribed acts was a condition precedent to the perfection of the right, with the result that the accomplishment of some by the widow prior to her death, the remainder being performed by others thereafter, rendered the whole negatory.

Any consideration of the interpretations by other courts of diverse enactments is at best a fruitless task to one seeking the correct construction of an act couched in different phraseology, since " slight differences in the terms of statutes may at times lead to varying interpretations of legislative intent, and decisions as to the effect of other statutes may furnish but uncertain guidance in the construction of the statute now under consideration." (*Horowitz* v. *Winter*, 129 Misc. 814, 816; *Matter of Cohen*, 149 id. 765, 777.) As in the interpretation of wills, therefore, the final recourse must

be to the phraseology of the particular statute itself, in an effort to extract therefrom the legislative intent which, alone, is the material consideration.

So far as presently pertinent, section 18 reads: " Where a testator dies after August thirty-first, nineteen hundred and thirty, and leaves a will thereafter executed and leaves surviving a husband or wife, a personal right of election is given to the surviving spouse to take his or her share of the estate as in intestacy, subject to the limitations, conditions and exceptions contained in this section. * * * An election made under this section * * * must be made within six months from the date of the issuance of letters testamentary * * * and shall be made by serving written notice of such election upon the representative of the estate personally * * * and by filing and recording a copy of such notice with proof of service in the surrogate's court where such will was probated."

Analyzing this wording, it will be seen that " a personal right of election is given * * * subject to the * * * conditions * * * contained in this section." These " conditions " as expressly stated, are two, and only two, in number, namely, (1) " Serving a written notice of such election upon the representative of the estate personally;" (2) " filing and recording a copy of such notice with proof of service in the surrogate's court where such will was probated."

It is further provided that, to be effective for the purpose, these two acts which are prescribed as essential for the purpose of giving rights in contravention of the terms of the will, must be performed " within six months from the date of issuance of letters testamentary."

This act, unlike those of many other States, does not require that the notice, the service and recording of which are required to effect the election, should be acknowledged or even signed by the elector in person, although it would certainly appear to be the better practice so to do. (*Matter of Zweig*, 145 Misc. 839, 859.) Two acts are, however, expressly specified by the Legislature as essential to the perfecting of the right, namely, personal service of the notice of election and its filing and recording with proof of personal service.

In the case at bar the only act which was performed by the surviving spouse was one which the Legislature considered of such minor importance that it was not even included in the enumeration of the steps which were expressly made the " conditions " " subject to " which " a personal right of election is given." On the other hand, none of the express conditions imposed by the statute met with compliance prior to the death of the widower. Rights

given a·surviving spouse by section 18 are in direct derogation of the former unconditioned rights of testamentary disposition which the decedent possessed, and its interpretation must in consequence be governed by the basic principle of statutory construction that the steps required to defeat the common-law right thus modified must be strictly observed. (*Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388, 393; *Dean* v. *Met. El. Ry. Co.*, 119 id. 540, 547; *Matter of Marsh*, 143 Misc. 609, 614; *Matter of Smith*, 136 id. 863, 880.)

To give rise to any rights in contravention of the will, the Legislature has required the performance of the acts of serving, filing and recording. These and these alone are the conditions precedent to the defeat of the common-law right of free testamentary disposition by the decedent. The right of election is personal to the surviving spouse, wherefore by express legislative fiat these acts must be performed by the surviving spouse if the right is to be acquired. So long as he lives, the surviving spouse may undoubtedly perform them either personally or by his duly authorized agent or attorney. After his death he cannot perform them in either manner, since an agency or power of attorney terminates on death. (*Austin* v. *Munro*, 4 Lans. 67, 68; affd., 47 N. Y. 360; *Matter of Robbins*, 61 Misc. 114, 119; affd., 132 App. Div. 905; *Anderson* v. *Anderson*, 20 Wend. 585, 586; *Putnam* v. *Van Buren*, 7 How. Pr. 31, 35; *Church* v. *McLaren*, 84 Wis. 122, 126; 55 N. W. 152.)

It follows that as the surviving spouse in the case at bar failed to perform the acts required to perfect a right of election against the will, that right died with him and the objections to the account must be overruled.

Proceed accordingly.